UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JUMAR K. JONES,

                Plaintiff,

v.                                              Case No. 17-cv-704-pp

JON LITSCHER,
SCOTT ECKSTEIN,
MICHELLE HAESE,
LT. LENZ, and
STEVE SCHUELER,

                Defendants.

---

**DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO USE FUNDS FROM HIS RELEASE ACCOUNT TO PAY THE FILING FEE BALANCE (DKT. NO. 18), SCREENING PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 17), AND DISMISSING THE CASE**

---

On May 19, 2017, the plaintiff—a state prisoner representing himself—filed a complaint under 42 U.S.C. §1983. Dkt. No. 1. He later filed an amended complaint, dkt. no. 13, which the court screened. After identifying problems with the amended complaint, the court gave the plaintiff the opportunity to file a second amended complaint. Dkt. No. 15. The plaintiff took advantage of that opportunity and filed a second amended complaint on March 28, 2018. Dkt. No. 17. That same day, the plaintiff filed a motion asking the court to order his institution to deduct the remainder of the filing fee from his release account rather than from his regular prison trust account. Dkt. No. 18. This decision resolves the plaintiff's motion and screens his second amended complaint.

## I. Motion to Use Release Account Funds to Pay Balance of Filing Fee

The plaintiff has asked the court to order his institution to deduct the balance of the filing fee from his release account, rather than from his regular prison trust account. Dkt. No. 18. In support of his motion, the plaintiff attached a copy of Department of Adult Institutions (DAI) policy 309.45.02, Attachment A, which explains the DAI's policy for when a prisoner may use the funds in his prisoner's release account. Dkt. No. 18-1.

The Prison Litigation Reform Act requires the court to collect filing fees from a "prisoner's account." 28 U.S.C. §1915(b). The term "prisoner's account" includes both a prisoner's release account and his general account. Spence v. McCaughtry, 46 F. Supp. 2d 861, 862 (E.D. Wis. 1999). "A release account is a restricted account maintained by the Wisconsin Department of Corrections to be used upon the prisoner's release from custody upon completion of his sentence." Wilson v. Anderson, Case No. 14-C-798, 2014 WL 3671878 at *3 (E.D. Wis. July 23, 2014) (citing Wis. Adm. Code § DOC 309.466). Given the purpose of the release account, federal courts generally don't consider it a good idea to focus on that account as the source of money to pay the filing fee requirements. Smith v. Huibregtse, 151 F. Supp. 2d 1040, 1042 (E.D. Wis. 2001).

By attaching DAI policy 309.45.02 to his motion, the plaintiff appears to suggest that the Department of Corrections' policy allows prisoners to use release account funds to pay case filing fees. If that is the plaintiff's interpretation of the policy, he is incorrect. The policy states that a prisoner

2

may use funds in his release account to pay for PLRA fees (i.e., case filing fees) *only* if a court directly orders the institution to use those funds, and only if there are no funds available in the prisoner's regular prison trust account.

As to the first requirement, the policy acknowledges that, in some circumstances, a court may decide that it is appropriate to deviate from the standard practice and allow a prisoner to use release account funds to pay the filing fee. This provision encourages a prisoner to present his request to the court, so the court may decide whether departing from the standard practice is necessary or appropriate. Here, the plaintiff has not identified any reason that the court should allow him to pay his filing fee balance out of his trust account. He addressed the motion to the clerk of court, and all it said was that he was requesting an order directing the institution to let him pay the balance from the release account. Dkt. No. 18.

As to the second requirement, the policy says that, to the extent a prisoner has funds in his regular account, he first should use those funds to pay case filing fees, rather than depleting the funds in his release account. On May 19, 2017, the court received from the plaintiff a copy of his regular trust account statement for the period from November 15, 2016 through May 5, 2017—some five and a half months. Dkt. No. 3. That statement showed that, at least as of that period, the plaintiff was receiving regular deposits into his account (presumably from his prison job), as well as deposits from someone outside the institution (perhaps a friend or family member). The plaintiff's average monthly deposits totaled $160.14 for those months, and his average

monthly balance was a positive $30.41. Some of the money deposited was deducted by the institution for various reasons (including satisfying an outstanding restitution order), but much of it remained available to the plaintiff.

The money in the plaintiff's release account is there so that when he is released from custody, he won't go out into the world with nothing. Because the plaintiff has not given the court any reason to allow him to pay the balance of his filing fee from his release account, and because it appears that the plaintiff has adequate money in his regular account, the court does not think it is a good idea to allow him to use the money in his release account to pay his case filing fees. The court will deny this motion.

**II.   Screening the Plaintiff's Second Complaint**

　　A.　　*Federal Screening Standard*

The court previously explained to the plaintiff that it was required to dismiss a complaint if a plaintiff raises claims that are legally "frivolous, malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). To state a claim under the federal notice pleading system, a plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).

To proceed under 42 U.S.C. § 1983, a plaintiff must allege facts sufficient to support the inference that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting

4

under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

    B.    *The Plaintiff's Allegations*

The plaintiff is an inmate at Green Bay Correctional Institution. Dkt. No. 17 at 3. In the second amended complaint, he alleges that defendant Jon Litscher, the Department of Corrections Secretary, requires all inmates to follow the chain of command when filing inmate grievances. Id. The plaintiff states that, on July 11, 2017, he did just that, when he sent a letter to his unit manager defendant Michelle Haese, complaining that he was not allowed to exercise in his dorm even though other inmates in the prison are allowed to exercise in their living spaces. Id. He also complained that he was not able to attend his scheduled recreation/library periods because of his work/program obligations. Id.

About two weeks later, Haese sent a letter to the plaintiff, which allegedly informed him that, despite not being able to attend scheduled recreation periods with the rest of his unit, he had attended a library period the following week. Id. The plaintiff asserts that a few days later, he responded to Haese and informed her that she was incorrect. Id.

5

The next day, on August 1, 2017, defendants Scott Eckstein and Lieutenant Lenz allegedly called the plaintiff in for an interview. Id. at 3-4. According to the plaintiff, Eckstein told the plaintiff that his letter to Haese was disrespectful and that he had lied about an employee. Id. at 4. About two weeks later, Lenz allegedly charged the plaintiff with violating a rule that prohibits disrespect and lying about employees. Id. The plaintiff states that the rule does not prohibit language that is "not obscene, profane, abusive, or threatens others, where language necessary to describe the factual basis of the substance of the complaint." Id. The plaintiff also explains that "making a false statement outside the ICRS constitutes lying about an employee." Id.

According to the plaintiff, the prison disciplinary board found him guilty of disrespect and lying about an employee, because it believed the plaintiff disrespected Haese when he told her that "her justification for denying him the opportunity to exercise or attend scheduled recreation/library periods with his housing unit was nonsense, gibberish, that had no reality according to state and federal law." Id. The board also found that the plaintiff had lied about an employee when he stated that "he believed officers assault inmates." Id. The board disciplined the plaintiff with ninety days in segregation. A month later, deputy warden Steve Schueler approved the board's discipline and authorized the segregation. Id.

The amended complaint seeks money damages and asks the court to overturn the guilty finding and his punishment. Id. at 5.

6

C.  *The Court's Analysis*

Before addressing the substance of the plaintiff's claims, the court notes that the plaintiff has not stated a claim against Litscher or Schueler. Nowhere in the second amended complaint does the plaintiff provide the court with any facts that show that Litscher or Schueler were personally responsible for the alleged misconduct. He does not allege that they did anything—they did not interview him, review his complaint, charge him with violations, or discipline him. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996) (quoting Sheik-Abdi v. McClellan, 37 F.3d 1240, 1248 (7th Cir. 1994)). Under §1983, a plaintiff cannot sue someone under the theory of vicarious liability (he can't sue someone for another person's misconduct) or under the theory of supervisory liability (he can't sue a supervisor for the misconduct of his or her employees or subordinates).

Litscher's creation of a policy requiring inmates to report up the chain of command when filing grievances did not cause the plaintiff's injury, nor did Schueler's affirmance of the hearing officer's decision. While their limited involvement gave rise to the circumstances about which the plaintiff complains, neither of them was directly responsible for those circumstances. The plaintiff has not stated a claim against them under §1983, and the court will dismiss them as defendants.

With regard to the substance of the plaintiff's claims against defendants Haese, Eckstein and Lenz, it is not entirely clear to the court how the plaintiff believes they violated his constitutional rights. With regard to Haese, he says that he sent her a letter complaining about "not being able to exercise in the dorm, even though other inmates in the prison are allowed to exercise in their living space," and about "not being able to attend his scheduled recreation/library periods due to work/program conflicts." Id. at 3. He says that Haese sent him a letter back, telling him that "even though he was not allowed to attend his scheduled recreation period with his housing unit, he subsequently attended a library period the next week." Id. He says that he sent a letter back to Haese, disagreeing with her. Id. It appears that in his letter back to Haese, the plaintiff told her that "her justification for denying him the opportunity to exercise or attend scheduled recreation/library periods with his housing unit was nonsense, gibberish, that had no reality according to state and federal law." Id. at 4.

The plaintiff doesn't allege that Haese told him he couldn't exercise in the dorm. He doesn't allege that Haese told him he couldn't go to scheduled recreation, or to the library. Rather, he says that he sent Haese a complaint, and that he disagreed with her response. The Constitution does not give an inmate a right to have prison staff agree with him.

Even if the plaintiff had alleged that Haese refused to allow him to exercise in the dorm, he would need to allege a lot more to state a claim. The plaintiff does not say whether he was denied the ability to exercise in the dorm

on one occasion, or all the time. The plaintiff alleges that the institution allows other inmates to exercise in their living spaces. He does not explain whether those other inmates are allowed to exercise in the *dorms*, or whether they exercise in their *cells*. He does not explain whether those inmates are in segregation, or in general population or in other housing. He does not explain whether he was under any discipline when he was told he could not exercise in the dorm. He does not say whether Haese explained *why* he couldn't exercise in the dorm.

The court must accord prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979). Decisions about where and when inmates may exercise are the type of "day-to-day operation[s] of a corrections facility [that] are not susceptible [to] easy solutions." See id. The court must defer to their expert judgment in such matters.

Even if the plaintiff had alleged that Haese picked the plaintiff as the only person in the whole institution who was not allowed to exercise in the dorm, he would need to provide yet more information to state a claim. If prison staff treat one inmate differently from all other inmates, it is possible that the staff might violate the Equal Protection Clause of the Fourteenth Amendment. A plaintiff may bring what is known as a "class of one" equal protection claim if he does not belong to any particular class or group, if he can show "that [he] has been intentionally treated differently from others similarly situated and that there is

9

no rational basis for the difference in treatment." D.B. *ex rel.* Kurtis B. v. Kopp, 725 F.3d 681, 684 (7th Cir. 2013) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

The plaintiff does not indicate whether Haese intentionally treated him differently than other inmates, or that she did not have any rational basis for doing so.

The plaintiff also has not alleged that Haese told him he could not go to recreation, or to the library. Instead, he seems to allege that he complained to Haese that his schedule did not permit him to take advantage of all of these opportunities; it appears that his work commitments and programming commitments were scheduled at times that conflicted with his recreation or library schedule. Making difficult choices between opportunities to work and opportunities for discretionary activities such as recreation is a tension with which all people—incarcerated or not—struggle. The Constitution does not require institutions to adjust each individual inmate's schedule to ensure that they can participate in all of their preferred activities.

An inmate does not have a liberty interest in prison employment, programming or recreation. Obriechet v. Raemisch, 565 Fed. App'x 535, 539 (7th Cir. 2014); Murdock v. Washington, 193 F.3d 510, 513 (7th Cir. 1999). See also Douglas v. DeBruyn, 936 F.Supp. 572, 576 (S.D. Ind. 1996). Even if the plaintiff had alleged that Haese refused to allow him to work, or to attend programming, or to go to recreation, he would not be able to state a claim that the refusal violated his constitutional rights unless he could show that the

refusal deprived him "of basic human needs like food, medical care, sanitation, and physical safety." James v. Milwaukee County, 956 F.2d 696, 699 (7th Cir. 1992).

And even if the plaintiff had alleged that Haese intentionally restricted his library time, that allegation would not give rise to a constitutional violation unless he alleged that the restricted library time caused him some damage or harm. Higgason v. Farley, 83 F.3d 807, 810 (7th Cir. 1996). The plaintiff has filed multiple complaints in this case and has another case pending before this court—there is no suggestion that whatever it is that is interfering with the plaintiff going to the library as often as he'd like is interfering with his access to the court.

In short, the plaintiff's allegations don't state a constitutional claim against Haese.

With regard to Eckstein and Lenz, the plaintiff alleges first that they called him in for an interview, and that Eckstein told the plaintiff that the plaintiff's letter had disrespected and lied about Haese. Dkt. No. 17 at 3-4. The plaintiff alleges that Lenz charged him with violating a Wisconsin DOC rule that prohibited disrespect and lying about employees. Id. at 4. The plaintiff asserts that the DOC rules don't prohibit such actions, when they are "necessary to describe the factual basis of the substance of the complaint," and the language used isn't obscene, profane, abusive or threatening. Id. At the end of the complaint, the plaintiff says that the "Department" issued "false and unjustified disciplinary charges." Id. at 5.

Again, it is not clear why the plaintiff believes Eckstein violated his constitutional rights. Eckstein called him in for an interview, and expressed the opinion that the plaintiff's letter disrespected Haese and lied about her. Neither of these actions violate any provision of the Constitution.

The plaintiff appears to allege that the charge Lenz issued was "false and unjustified." Even if the plaintiff is correct that Lenz deliberately issued a false charge against him, he cannot state a claim of a constitutional violation. The Seventh Circuit has held that "an allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided." Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984). The plaintiff concedes that he received due process on the allegedly false report. The prison disciplinary board presumably had a hearing, where the plaintiff would have had the opportunity to argue that Lenz's charge was false.

The court also notes that as a remedy for this alleged violation, the plaintiff asks the court to overturn "the [board's] guilty finding and punishment," and to award him money damages for the time he spent in segregation. Dkt. No. 17 at 5. In other words, the plaintiff is asking the court to invalidate the board's decision finding the plaintiff guilty of the allegedly false charge Lenz filed.

"[C]laims challenging the fact or duration of state confinement are not cognizable under § 1983." Savory v. Lyons, 469 F.3d 667, 670 (7th Cir. 2006);

12

see also Antonelli v. Foster, 104 F.3d 899, 900-01 (7th Cir. 1997) (explaining that the bar on such claims applies to disciplinary punishment for violating a prison's rules). If this court were to rule in the plaintiff's favor on his claim that the board's decision was wrong because the conduct report was inconsistent with DOC rules, such a ruling would "necessarily imply the invalidity of the punishment imposed." Edwards v. Balisok, 520 U.S. 641, 648 (1997). A district court is not allowed to invalidate the board's finding and punishment under §1983, so court cannot allow the plaintiff to proceed against Lenz on that basis.

The plaintiff does not appear to argue that the punishment of ninety days in segregation somehow violated his civil rights. Even if he had, he would fail to state a claim on that basis. Ninety days in segregation is a relatively short period of time, and the plaintiff does not allege that the conditions in segregation imposed "atypical and significant" deprivations or hardships. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995). For that reason, the ninety-day punishment itself does not implicate a liberty interest. See id. at 485-86. If the plaintiff did not have a liberty interest, then the Due Process Clause did not provide him any protection, and the punishment could not violate the Due Process Clause. Further, the plaintiff states that he was disciplined as a result of a finding by the disciplinary board, which means that if he had been entitled to due process protections, he received all the process he was due.

The plaintiff has not stated claims for which relief can be granted against any of the defendants he has named in the second amended complaint. The court notes one other thing. In his original complaint, the plaintiff named

13

twelve defendants, only three of whom he named in this second amended complaint (Litscher, Eckstein and Haese). Dkt. No. 1. That complaint was twenty-one pages long, and alleged that the defendants violated his First Amendment rights to the free exercise of religion and the Fourteenth Amendment's equal protection and due process clauses (relating to his religious practices as a Muslim), as well as his Eighth Amendment rights related to overcrowding and showering. Id. at 17-21.

Before the court screened that complaint, the plaintiff filed an amended complaint. Dkt. No. 13. The amended complaint named twelve defendants, but they weren't the same twelve defendants he named in the original complaint, and he did not include two defendants whom had previously told the court he wanted to add. Nonetheless, the court screened that amended complaint. It concluded that the amended complaint contained different allegations of different kinds of injuries against different defendants at different times. Dkt. No. 15 at 7-8. The court told the plaintiff that he needed to file an amended complaint, choosing one set of claims against one set of defendants, and state in simple, short terms what those defendants did to violate his rights. Id. at 9-11.

The plaintiff then filed the amended complaint the court now dismisses. The court commends the plaintiff for filing a shorter, more concise complaint that contains claims against a single set of defendants. But the court cannot allow the plaintiff to proceed on this complaint, because it does not state claims for which this court can grant relief.

14

## II. Conclusion

The court **DENIES** the plaintiff's motion to use funds from his release account to pay the remainder of the filing fee. Dkt. No. 18.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim.

The court will enter judgment accordingly, and the clerk will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 10th day of May, 2018.

BY THE COURT:

**HON. PAMELA PEPPER**
**United States District Judge**